1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

_____
                                                        )
HOCKERSON-HALBERSTADT, INC.,          )
                                                        )          No. C03-1188L
                              Plaintiff,               )
          v.                                           )
                                                        )          ORDER REGARDING HHI'S
COSTCO WHOLESALE CORPORATION,     )          MOTION FOR PARTIAL
                                                        )          SUMMARY JUDGMENT
                              Defendant.            )
_____)

## I.  INTRODUCTION

This matter comes before the Court on a motion for partial summary judgment filed by

plaintiff Hockerson-Halberstadt, Inc. ("HHI").  (Dkt. #51).  HHI is the owner of United States

Patent No. 4,322,895 ("the '895 patent"), which relates to a stabilized athletic shoe.  HHI alleges

that defendant Costco Wholesale Corporation ("Costco") infringed on the '895 patent by

making, using, selling, offering for sale and/or importing men's and women's Court Classic shoe

models, which embody the patented invention.  HHI seeks to dismiss Costco's affirmative

defenses for (1) failure to state a claim; (2) invalidity or unenforceability based on 35 U.S.C. §§

102, 103, and/or 112; (3) non-infringement; (4) limitations of damages under 35 U.S.C. § 286 to

the period six years prior to the date this suit was filed; and (5) unclean hands and laches.

For the reasons set forth below, the Court grants in part and denies in part HHI's motion.

ORDER REGARDING HHI'S MOTION
FOR PARTIAL SUMMARY JUDGMENT

**II.  DISCUSSION**

**A.     Background and Claim Language.**

The HHI patent was issued in April 1982.  The Patent, for a "Stabilized Athletic Shoe," claims a shoe that provides additional stability during running.  According to the patent, the midsole design of prior-art shoes did not provide adequate stability.  To provide additional stability, the patent secured a support band to the upper rim of the midsole and the sides of the heel cup.

In 1992, a third party requested reexamination of the patent by the U.S. Patent and Trademark Office ("USPTO"), which granted the request.  HHI submitted several proposed claim amendments, and the USPTO issued a reexamination certificate in 1995.

Claim 1, as amended during reexamination, reads as follows.  Words deleted from the original claim are shown in brackets and words added during reexamination appear in italics:

1.  An Athletic Shoe comprising a sole having a midsole [with a forefoot and heel portions] *formed of a resilient force-absorbing material*,

*an outsole mounted below the midsole, said outsole being formed of a durable material for contact with a surface,*

an upper mounted on the sole, the upper having a counter forming a heel cup having exterior sidewalls *with lower edges*,

a support band carried on the upper rim of the midsole and secured about the sidewalls of the heel cup,

said band extending upwardly and merging with the vertical midspan of the heel cup for supporting and stabilizing the heel cup relative to the sole during contact of the sole onto the surface when in use,

*said midsole comprising a forefoot position and heel portion means, said heel portion means being pyramid shaped in lateral cross section with a lower rim having opposite sides which flare outwardly to locations which lie sufficiently laterally beyond the lower edges of the heel cup for substantially stabilizing the shoe during initial contact on the surface along one side of the sole,*

the opposite sides of the lower rim of the heel portion *means* having a lateral width greater than the lateral width of the heel cup midspan, and

the *midsole and* support band *having wall means which* inclines upwardly from the lower rim of the heel portion *means* to the heel cup midspan for resisting flexing of the [side]

*sidewalls* of *the* heel cup relative to the sole during said initial contact on the surface along one side of the sole.

**B.      Summary Judgment Standard for Patent Claims.**

The moving party is entitled to summary judgment under Rule 56(c) "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

In patent infringement cases, summary judgment is appropriate when it is apparent that only one conclusion as to infringement could be reached by a reasonable jury.  See Telemac Cellular Corp. v. Topp Telecom, Inc., 247 F.3d 1316 (Fed. Cir. 2001) (citing ATD Corp. v. Lydall, Inc., 159 F.3d 534, 540 (Fed. Cir. 1998)).

**C.      Patent Validity.**

A patent is presumed to be valid.  35 U.S.C. § 282.  The fact that the '895 patent survived reexamination makes it more difficult for Costco to prevail on its claim of invalidity.  See Patlex Corp. v. Mossinghoff, 758 F.2d 594, 603 (Fed. Cir. 1985) (explaining that the burden of proving unpatentability is more difficult to meet following a successful reexamination).  Because an issued patent is presumed valid, the challenging party must support its claim of invalidity by clear and convincing evidence.  See, e.g., SIBIA Neurosciences, Inc. v. Cadus Pharm. Corp., 225 F.3d 1349, 1355 (Fed. Cir. 2000).

**1.      Anticipation Pursuant to Section 102.**

Costco argues that the claims of the '895 patent are invalid because they were anticipated by prior art under 35 U.S.C. § 102(b).  Section 102(b) provides that an invention is anticipated if "the invention was patented or described in a printed publication in this or a foreign country or in public use or on sale in this country, more than one year prior to the date of the application

ORDER REGARDING HHI'S MOTION
FOR PARTIAL SUMMARY JUDGMENT          -3-

for patent in the United States."

A court may invalidate claims on a motion for summary judgment when the subject matter of the claims is anticipated under 35 U.S.C. § 102.  See Electro Med. Sys. v. Cooper Life Sciences, Inc., 34 F.3d 1048, 1052 (Fed. Cir. 1994).  Anticipation must be proven by clear and convincing evidence.  Id.  "Although anticipation is a question of fact, it still may be decided on summary judgment if the record reveals no genuine dispute of material fact."  General Elec. Co. v. Nintendo Co., Ltd., 179 F.3d 1350, 1353 (Fed. Cir. 1999).

To be anticipated, a single prior art reference must disclose each and every element of a claimed invention.  See In re Paulsen, 30 F.3d 1475, 1478-79 (Fed. Cir. 1994).  "In addition, the reference must be enabling and describe the applicant's claimed invention sufficiently to have placed it in possession of a person of ordinary skill in the field of invention."  Id. at 1479.

Costco argues that Fukuoka's U.S. Patent No. 3,952,358 (the "Fukuoka shoe") discloses every element of the '895 patent and therefore anticipates it.[1]  The parties do not dispute that the Fukuoka shoe is an example of "prior art."[2]  The fact that the Fukuoka was cited to the USPTO during reexamination, and the reexamination certificate was nevertheless issued, weighs against a finding of anticipation.  Costco's expert, Ray Fredericksen,[3] states that the Fukuoka shoe

[1] Although Costco's expert identified additional shoes which he argued anticipated the '895 patent, Costco argues only that the Fukuoka shoe anticipates.

[2] HHI relies on a prior decision, Hockerson-Halberstadt, Inc. v. Propet USA, Inc., for "the fact" that a prior jury rejected an argument that the Fukuoka shoe anticipated the '895 patent.  HHI's Motion at 6.  As an initial matter, the Propet order states that the jury found the patent was not invalid; it does not state whether anticipation was argued or considered.  Regardless, the Propet decision is not binding on Costco.

[3] In its reply memorandum, HHI objected to the admissibility of Costco's reports from Ray Fredericksen and John Hansen because they were not sworn affidavits or declarations filed under penalty of perjury.  HHI's Reply at 1.  Costco subsequently refiled the reports and has cured the deficiencies; therefore, HHI's objection is now moot.

ORDER REGARDING HHI'S MOTION
FOR PARTIAL SUMMARY JUDGMENT          -4-

includes every element of the '895 patent.  In response, HHI argues that Mr. Fredericksen's report states conclusions without "any real explanation."  HHI also argues that the Fukuoka shoe does not have a separate outsole mounted below the midsole.  HHI's Reply at 3 (citing Whatley Decl. at ¶ 8).  Although Mr. Fredericksen cites to the specifications of the Fukuoka shoe patent which state that the sole "comprises a foamed inner layer and a non-foamy outer layer," this language does not state that the layers are necessarily separate pieces or that the outer layer is "durable."  Costco Ex. 5 at column 7, lines 48-51.  In fact, the same sentence states that the sole "is integrally molded."  Id.  Costco has not shown that the Fukuoka shoe discloses every element of the '895 patent.

Because no reasonable juror could find that the '895 patent was anticipated, summary judgment on this issue is appropriate.

### 2. Obviousness.

Under 35 U.S.C. § 103, a patent may not be obtained if the claimed subject matter would have been obvious to a person of ordinary skill in the art at the time of the invention.  A court considering obviousness considers (1) the scope and content of the prior art; (2) the level of ordinary skill in the art (3) the differences between the prior art and the invention at issue; and (4) the objective evidence of nonobviousness.  See Iron Grip Barbell Co., Inc. v. USA Sports, Inc., 392 F.3d 1317, 1320 (Fed. Cir. 2004) (citing Graham v. John Deere, 383 U.S. 1 (1966)).  The court may also consider commercial success and/or any long-felt need for the invention.  Graham, 383 U.S. at 17-18.  Consideration of these factors "serves as a guard against slipping into use of hindsight and to resist the temptation to read into the prior art the teachings of the invention in issue."  Id. at 36.  Obviousness is an issue of law but includes underlying factual considerations.  Iron Grip Barbell Co., Inc. 392 F.3d at 1323.

The parties's experts have set forth very similar statements of the level of ordinary skill in the art at the time of the invention, and HHI concedes that the level of ordinary skill "was very

ORDER REGARDING HHI'S MOTION
FOR PARTIAL SUMMARY JUDGMENT            -5-

1    basic and very low."[4]  HHI's Motion at 8.  It is undisputed that shoes embodying the '895 patent

2    have enjoyed commercial success.  Moreover, the '895 patent satisfied a long-felt need for a

3    stabilized athletic shoe as prior athletic shoes tended to break down, and consumers resorted to

4    using after-market improvements to alleviate the problem.

5          Costco argues that the '895 patent was obvious in part because it was common practice

6    for individuals to improve shoes through the use of after-market products including Shoe Goo,

7    heel wedges, and other devices.  Fredericksen Decl. at ¶¶ 3-4.  Although the use of these

8    products highlights the need for an improved shoe, Costco has not shown how consumers' after-

9    market home improvements supports its theory that it was obvious to one skilled in the art to

10   make structural changes to the design of the shoe.

11         Costco also argues that the '895 patent is obvious is light of the Lasse Viren shoe.

12   Although a single prior art reference can render a claim obvious, "there must be a showing of a

13   suggestion or motivation to modify the teachings of that reference to the claimed invention in

14   order to support the obviousness conclusion."  SIBIA Neurosciences, Inc., 225 F.3d at1356.

15   The parties, and their experts, disagree regarding whether the Lasse Viren shoe has a support

16   band carried on the upper rim of the midsole, and whether the shoe teaches toward or away from

17   the '895 patent.  Furthermore, the Lasse Viren shoe was patented in Japan and neither party has

18   presented an English translation of the claim or specifications.  Therefore, the Lasse Viren shoe

19   creates a genuine issue of material fact.

20         Finally, Costco argues that "the prior art is filled with many shoes in which a 'support

21   _____

22        [4] Costco's expert opines that one of ordinary skill in the art at the time of the invention is "one
     who understands basic principles of shoe construction and wear."  Fredericksen Decl. at ¶ 8.  HHI's
23   expert opines, "Around the time of the invention of the '895 patent in the late 1970s, one of ordinary skill
     in the art of shoe making would have knowledge from experience in sport or coaching combined with
24   knowledge of shoe making through such sources as working in a shoe store or for a shoe company.  Such
     a level tended to lead away from innovation . . . ."  Supplemental and Rebuttal Expert Report of Whatley
25   at ¶ 5.

26   ORDER REGARDING HHI'S MOTION
     FOR PARTIAL SUMMARY JUDGMENT            -6-

1   band' wraps up and around the midsole exactly as claimed."  Costco's Opposition at 17.

2   "Where an invention is contended to be obvious based upon a combination of elements across

3   different references, our cases require that there be a suggestion, motivation or teaching to those

4   skilled in the art for such a combination."  Iron Grip Barbell Co., Inc. 392 F.3d at 1320 (citing In

5   re Fine, 837 F.2d 1071, 1074 (Fed. Cir. 1988)).  There is conflicting information regarding

6   whether the combination of elements in the '895 patent was obvious in light of the combination

7   of prior art.  In light of these factual differences, summary judgment is not appropriate on the

8   issue of obviousness.

9   **D.    Infringement.**

10          An infringement analysis involves two steps: (1) the determination of the meaning and

11   scope of the patent claims asserted to be infringed, known as claim construction, and (2)

12   comparing the properly construed claims to the method accused of infringing.  See Markman v.

13   Westview Instruments, Inc., 52 F.3d 967, 976 (Fed. Cir. 1995).  The Court has construed the

14   claims in an earlier order.  Dependant claims are not infringed if independent claims are not

15   infringed, so this Court limits its discussion to independent claim 1.  See, e.g., Wahpeton Canvas

16   Co. v. Frontier, Inc., 870 F.2d 1546, 1552 n.9 (Fed. Cir. 1989).  Because HHI argues that

17   Costco's shoes literally infringe the '895 patent but does not argue that they infringe under the

18   doctrine of equivalents, the Court does not address the doctrine of equivalents.

19          Literal infringement is a question of fact, and requires every limitation of a patent claim

20   to be present in the accused device.  See, e.g., RF Del. Inc. v. Pac. Keystone Techs., Inc., 325

21   F.3d 1255, 1266 (Fed. Cir. 2003).  Summary judgment is not appropriate if a reasonable jury

22   could find that a limitation of a claim is missing from the accused product.  See, e.g., Gart v.

23   Logitech, Inc., 254 F.3d 1334, 1339 (Fed. Cir. 2001).

24          Costco contends that it has not literally infringed the '895 patent because its shoes do not

25   have a "wall means which inclines" or a "lower rim" which is wider than the "heel cup

26   ORDER REGARDING HHI'S MOTION
    FOR PARTIAL SUMMARY JUDGMENT            -7-

1    midspan."  The Court previously construed the "wall means which inclines upwardly" term to

2    mean that the midsole and support band form a structure which must incline upwardly from the

3    lower rim to the heel cup midspan for resisting flexing of the sidewalls of the heel cup relative to

4    the sole during said initial contact on the surface along one side of the sole.  Costco argues that

5    the wall means in its shoe flare outwardly, or are at least vertical.  It is undisputed that HHI has

6    previously disavowed a construction which includes wall means which flare out or are vertical.

7    The issue is whether Costco's shoes have wall means which incline inwardly.  The parties'

8    experts measured the "lower rim" and the "vertical midspan" at different places, and therefore

9    obtained different measurements.  The correct point from which to measure is an issue of claim

10    construction, which is an issue of law.  Although the Court has previously construed the terms of

11    the '895 patent, it clarifies its prior order to provide additional guidance now that the nature of

12    the dispute is clearer.

13        As an initial matter, the parties disagree regarding whether the wall means is the structure

14    that provides support or whether it is the physical outer face of the shoe, including any cosmetic

15    material.  The Court's prior order resolved this issue.  The Court's prior order defined the wall

16    means as "a structure . . . for resisting flexing . . . ."  Because any cosmetic material cannot form

17    or contribute to a structure for resisting flexing, the wall means exclude any outer material that is

18    purely cosmetic.

19        HHI argues that the Court's prior order requires that the width of the lower rim be

20    measured when the heel contacts a surface at an angle during athletic use, which results in a

21    wider measurement than when the shoe is not striking a surface.  Neither party advanced this

22    argument during claim construction.  The Court's prior order did not define the lower rim

23    measurement in the way HHI now urges.  Instead, it construed the location of the lower rim as

24    "the lowest edge or border of the heel portion of the pyramid shaped midsole at a point where

25    the shoe actually touches the ground during heel contact with the surface."  HHI's expert, Ian

26

ORDER REGARDING HHI'S MOTION
FOR PARTIAL SUMMARY JUDGMENT      -8-

1    Whatley, states what he believes to be the correct measurement; he does not describe how he

2    calculated that measurement.  Because Mr. Whatley argues that Costco's expert ignored the fact

3    that walking and running widen the lower rim, it appears that he measured the lower rim during

4    athletic use.  However, he does not describe the wearer's personal characteristics (such as

5    weight or stride) or whether he or she was walking or running, all of which would presumably

6    affect the measurement if HHI's construction were accepted.  HHI's method, therefore, is

7    inconsistent with this Court's Order and would yield inconsistent measurements.  HHI's

8    calculation method is also inconsistent with the testimony of its own expert, Mr. Whatley,

9    during the <u>Markman</u> hearing.  Mr. Whatley testified that the lower rim is "where the outsole

10   peels up" from the ground.  Costco Ex. 13 at pp. 98-99.  The Court clarifies that its prior order

11   requires a measurement at the lowest edge or border of the heel portion of the midsole at a point

12   *where* the shoe actually touches the ground, not that the measurement be taken *when* the shoe is

13   striking the ground during athletic use.

14        HHI also argues that the measurement of the heel cup midspan must be taken at several

15   different places because the Court construed the term to mean "the place where the support band

16   is secured about the sidewalls of the heel cup."  Whatley Decl. at ¶ 6.  The Court's prior order

17   referred to a single place, not multiple places.  Moreover, the patent specifications require that

18   the support band "extends upwardly" to attach to the sidewall of the heel cup along line 40 in

19   Figure 6.  HHI's current proposed construction does not identify any "place," and is at odds with

20   the proposed construction it advanced during claim construction, which was that the midspan is

21   the end (or top) of where the support band merges with the heel cup, along line 40 in Figure 6.

22   <u>See</u> Costco Ex. 13 at p. 167 (testimony of Mr. Whatley); Rebuttal Expert Report of Ian Whatley

23   at ¶ 17.  In accordance with the language and drawings of the patent and this Court's prior order,

24   the measurement for the heel cup midspan must be taken at the top of where the support band is

25   secured to the sidewalls of the heel cup at the outer edges of line 40 in Figure 6.

26

ORDER REGARDING HHI'S MOTION
FOR PARTIAL SUMMARY JUDGMENT                 -9-

1    Although the point of measurement is an issue of law, the correct measurement is an issue

2    of fact.  The parties have presented conflicting evidence regarding the appropriate method of

3    calculation and the correct measurements.  These are issues of facts precluding summary

4    judgment.

5    **E.    Failure to State a Claim, Unclean Hands, and Laches.**

6        Costco has asserted affirmative defenses for failure to state a claim, unclean hands, and

7    laches.  Costco has not responded to HHI's motion regarding dismissal of these affirmative

8    defenses, and it appears that dismissal is appropriate.

9    **F.    Damages.**

10       HHI requests summary judgment on two issues: the minimum amount of damages, and

11   the time period for which damages are available.  First, HHI argues that if infringement is found,

12   it is entitled to damages in an amount no less than $2.25 per pair of infringing shoes, multiplied

13   by a minimum number of infringing shoes based on Costco's sales records.  The parties' experts

14   disagree regarding the amount of a reasonable royalty.  HHI has moved to exclude Costco's

15   damages expert, John L. Hansen.  (Dkt. #45)  Costco also argues for the exclusion of HHI's

16   expert report concerning damages, authored by Ian Whatley.  The Court will address the

17   requests to exclude the expert reports by separate order.  Based on the current record, a dispute

18   of fact exists regarding a minimum per shoe amount of damages.

19       HHI also argues that the Court should dismiss Costco's affirmative defense that damages

20   should be limited to the period six years prior to the date this suit was filed under 35 U.S.C.

21   § 286, which provides, "Except as otherwise provided by law, no recovery shall be had for any

22   infringement committed more than six years prior to the filing of the complaint or counterclaim

23   for infringement in the action."  This suit was filed on May 27, 2003.  Costco argues that HHI is

24   not entitled to damages prior to May 27, 1997.

25       HHI argues that the six-year period was equitably tolled by its filing of "two suits against

26

ORDER REGARDING HHI'S MOTION
FOR PARTIAL SUMMARY JUDGMENT          -10-

1   Costco in Louisiana within the six-year limitation period, by Costco's obstruction of the final

2   conclusion of the appeals of the jurisdictional issues, and by Costco's affirmative representations

3   to the Louisiana court that a delayed appeal would cause no prejudice to HHI."  HHI's Motion at

4   12.  HHI first filed suit against Costco, in Louisiana, on February 19, 1998.  The court found

5   that the statute of limitations had not run, and granted Costco's motion to dismiss for lack of

6   personal jurisdiction.  HHI filed a second suit, again in Louisiana, against Costco on March 13,

7   2000, before judgment had been entered in the first suit.  HHI alleged that personal jurisdiction

8   existed based on Costco's use of an interactive website; Costco's motion to dismiss for lack of

9   personal jurisdiction was granted.  Because the cases proceeded against other defendants, HHI

10   moved under Rule 54(b) for entry of judgment in both cases; Costco opposed the motions

11   arguing that HHI had not met its burden in showing that there was no just reason for delay.  The

12   court denied the Rule 54(b) motions.

13          HHI argues that Costco should be equitably estopped from arguing the six-year damages

14   limitation because it represented to the court in the Louisiana litigation that HHI would not be

15   prejudiced by a dismissal rather than a transfer or by a denial of HHI's Rule 54(b) motions.

16   HHI also argues that the limitations period should be equitably tolled because the Louisiana

17   courts could have transferred the actions against Costco rather than dismissing them.  HHI

18   argues that if equitable relief is granted, HHI is entitled to damages from September 6, 1996, the

19   date it gave Costco notice of the infringement.

20          In support of its argument that the damages limitation statute should be equitably tolled,

21   HHI relies on cases applying statutes of limitations.  HHI has not cited any authority in support

22   of its position that Section 286, which is a damages provision not a statute of limitations, is

23   subject to equitable tolling.  The relevant authority, though scant, militates against equitable

24   tolling of the damages provision.  See, e.g., A. Stucki Co. v. Buckeye Steel Castings Co., 963

25   F.2d 360, 363 (Fed. Cir. 1992) ("Stucki argues that certain equitable considerations in the nature

26

ORDER REGARDING HHI'S MOTION
FOR PARTIAL SUMMARY JUDGMENT          -11-

of those that may overcome the equitable defense of laches, e.g., the 'other litigation' exception, can also operate to 'toll' application of § 286.  We disagree"); <u>Standard Oil Co. v. Nippon Shokubai Kagaku Kogyo., Ltd.</u>, 754 F.2d 345 (Fed. Cir. 1985) (explaining that Section 286 is not a statute of limitations).  Accordingly, under the facts presented, equitable tolling is not appropriate.

Moreover, even if equitable tolling were available, HHI has not shown that tolling or equitable estoppel should apply under these facts.  HHI blames Costco's opposition of the Rule 54(b) motions for the delay; however, Costco was entitled to oppose the motions.  HHI had ample opportunity to present its damages limitation argument to the Louisiana court, which presumably considered and rejected those arguments.  Although HHI accuses Costco of engaging in strategic behavior, HHI voluntarily filed suit in Louisiana, then did so a second time despite Costco's *de minimus* contacts with that forum.  Therefore, the Court finds that HHI is not entitled to the benefit of equitable tolling, and it cannot seek damages for any period prior to May 27, 1997, six years before the date it filed this action.

### III.  CONCLUSION

For all of the foregoing reasons, the Court GRANTS IN PART AND DENIES IN PART HHI's motion for partial summary judgment (Dkt. #51).  The Court dismisses Costco's affirmative defenses for failure to state a claim, unclean hands, laches and invalidity based on anticipation.  The Court denies HHI's motion with respect to Costco's defenses of invalidity based on obviousness and non-infringement.  The Court finds that under 35 U.S.C. § 286, HHI cannot seek damages for any period prior to six years before the date it filed this suit.  Finally, the Court finds that a dispute of fact exists regarding a minimum per shoe amount of damages,

ORDER REGARDING HHI'S MOTION
FOR PARTIAL SUMMARY JUDGMENT          -12-

1   and denies HHI's request to set such a minimum amount.

2

3       DATED this 9th day of May, 2005.

4

5                             Robert S. Lasnik

6                             United States District Judge

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

ORDER REGARDING HHI'S MOTION
FOR PARTIAL SUMMARY JUDGMENT     -13-