UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

_____
)
HOCKERSON-HALBERSTADT, INC.,    )
) No. C03-1188L
               Plaintiff,    )
   v.    )
) ORDER REGARDING MOTIONS
COSTCO WHOLESALE CORPORATION,    ) TO EXCLUDE EXPERTS
)
               Defendant.    )
_____)

## I. INTRODUCTION

This matter comes before the Court on a motion *in limine* filed by plaintiff Hockerson-Halberstadt, Inc. ("HHI") to exclude or limit the expert testimony of John Hansen regarding damages issues. (Dkt. #45). Costco also moved, in its response to HHI's Motion for Partial Summary Judgment, to exclude portions of Ian Whatley's expert report concerning damages. Because both motions involve the issue of damages, the Court considers them together.

For the reasons set forth below, the Court grants in part and denies in part both requests to exclude. The Court also notes that the findings and conclusions in this order, like all rulings *in limine*, are preliminary and can be revisited at trial based on the facts and evidence as they are actually presented. See, e.g., Luce v. United States, 469 U.S. 38, 41 (1984) (explaining that a ruling *in limine* "is subject to change when the case unfolds, particularly if the actual testimony

ORDER REGARDING MOTIONS
TO EXCLUDE EXPERTS

differs from what was contained in the proffer.  Indeed even if nothing unexpected happens at trial, the district judge is free, in the exercise of sound judicial discretion, to alter a previous *in limine* ruling.").  Subject to these principles, the Court issues this ruling for the guidance of the parties.

## II.  DISCUSSION

The disputed expert opinions concern the issue of a reasonable royalty.  The factors to consider in determining a reasonable royalty were set forth in Georgia-Pacific Corp. v. U.S. Plywood Corp., 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970).  The parties acknowledge that the two most relevant factors in this case are:

> 1.  The royalties received by the patentee for the licensing of the patent in suit, proving or tending to prove an established royalty.
>
> 15.  The amount that a licensor (such as the patentee) and a licensee (such as the infringer) would have agreed upon (at the time the infringement began) if both had been reasonable and voluntarily trying to reach an agreement; that is, the amount which a prudent licensee – who desired, as a business proposition, to obtain a license to manufacture and sell a particular article embodying the patented invention – would have been willing to pay as a royalty and yet be able to make a reasonable profit and which amount would have been acceptable by a prudent patentee who was willing to grant a license.

See also Riles v. Shell Exploration & Prod. Co., 298 F.3d 1302, 1311 (Fed. Cir. 2002) ("In *Aro Manufacturing*, the Supreme Court stated that the statutory measure of 'damages' is 'the difference between the [the patent owner's] pecuniary condition after the infringement, and what his condition would have been if the infringement had not occurred.'"  *Aro Mfg. Co. v. Convertible Top Replacement Co.*, 377 U.S. 476, 507 (1964)).

**A.     Mr. Hansen's Report.**

HHI moved to strike Costco's report from John Hansen, who opines solely about the damages issue.  First, HHI argues that Costco did not timely identify him or disclose his report.  Mr. Hansen's report was timely disclosed if it is characterized as a rebuttal report, but not if it is a direct report.  HHI has the burden of proof on damages, so it was required to disclose its report

first. HHI argues that Mr. Hansen's report goes beyond rebutting Mr. Whatley's opinion; instead, Mr. Hansen offers his own affirmative opinion of how the reasonable royalty should be calculated and the correct amount. The Court finds that Mr. Hansen's report is properly characterized as a rebuttal report, because it, like Mr. Whatley's report, addresses the issue of a reasonable royalty and the application of the Georgia-Pacific factors. Accordingly, the report was disclosed in a timely manner.

Second, HHI argues that Mr. Hansen's report is based on two categories of irrelevant and/or inadmissible evidence: (1) license agreements entered into *after* Costco began infringing, and (2) agreements entered into in the context of infringement and/or as settlement agreements. The agreements executed after Costco began infringing cannot establish that HHI had an established license program at the time the infringement began. See Riles, 298 F.3d at 1313 (analyzing plaintiff's *past* licenses) (citing Unisplay, S.A. v. American Elec. Sign Co., 69 F.3d 512, 519 (Fed. Cir. 1995) (patentee's *prior license agreements* "should carry considerable weight in calculating a reasonable royalty rate.")). The later-executed agreements, however, are relevant to the hypothetical negotiation. Costco also argues that HHI entered into 47 agreements; Mr. Hansen excluded from his calculations the 17 agreements that were called settlement agreements or that referenced litigation. As to the remaining 30, HHI knew prior to the 30(b)(6) deposition that Costco planned to inquire into the circumstances surrounding the formation of the agreements. Nevertheless, the 30(b)(6) designee disclaimed any knowledge of the negotiations or how the payment amounts were calculated. HHI cannot now argue that the agreements were negotiated under threat of litigation. Therefore, the 30 agreements relied on by Mr. Hansen are admissible regarding the issue of the hypothetical negotiation.

Finally, HHI argues that Mr. Hansen is not qualified as an expert and his methodology is unsound. It appears that Mr. Hansen is qualified. However, Costco offered no evidence that using the median dollar amount of other license agreements is an accepted way to calculate a

ORDER REGARDING MOTIONS
TO EXCLUDE EXPERTS                     -3-

reasonable royalty.  Also, Costco has not shown that HHI had an established royalty program at the time the alleged infringement began.  Furthermore, the trier of fact can draw its own conclusions regarding how the other licenses would have affected the hypothetical negotiation.  Accordingly, the Court excludes the portion of Mr. Hansen's report regarding the median calculation and his conclusion based on that method as failing to meet the requirements of Evidence Rule 702.  The remainder of his report, including his opinion regarding the application of the Georgia-Pacific factors, appears admissible based on the current record.

**B.    Mr. Whatley's Reports.**

In its response to HHI's motion for partial summary judgment, Costco moved to strike Ian Whatley's opinions regarding the amount of a reasonable royalty.  Mr. Whatley's opinions are contained in the Initial Report of Ian Whatley re: Validity, Damages, and Infringement (Dkt. #34) and in the Supplemental and Rebuttal Expert Report of Ian Whatley re: Validity, Damages, and Infringement (Dkt. #51 at Ex. 16).  Costco argues that Mr. Whatley is "an accomplished runner and knowledgeable concerning shoe construction, but he is not qualified to testify on reasonable royalty issues."  Mr. Whatley's work history indicates that his current position involves "licensing," and he states that he has seen some license agreements, though he does not state how many or if he was involved in negotiating those licenses.  HHI notes that Mr. Whatley wrote and published an article titled "Evaluating Footwear Innovations" (Dkt. #65 at Ex. 29) which describes ways to evaluate the value of an innovation.  Mr. Whatley is sufficiently qualified to testify regarding the application of the Georgia-Pacific factors.

Costco also argues that Mr. Whatley's conclusion that a reasonable royalty would be in the range of $2.25 to $6.00 per shoe is unsupported and conclusory.  Mr. Whatley's reports do not specifically set forth how he calculated this amount.  Although the Georgia-Pacific hypothetical negotiation is aimed at determining what a prudent licensee would have been willing to pay as a royalty yet still be able to make a reasonable profit, Mr. Whatley admits that

ORDER REGARDING MOTIONS
TO EXCLUDE EXPERTS                              -4-

he does not know what Costco's pricing structure was. See, e.g., Standard Mfg. Co., Inc. v. United States, 42 Fed. Cl. 748, 766 (1999) (noting that "courts give considerable weight to an infringer's profits based on the theory that the parties in a hypothetical licensing negotiation would set a royalty rate which would divide the economic benefits between them"). In light of these deficiencies, Mr. Whatley's conclusion regarding the reasonable royalty rate will be excluded under Evidence Rule 702. See, e.g., General Elec. Co. v. Joiner, 522 U.S. 136, 147 (1997) (explaining that although courts must focus on principles and methodology rather than conclusions, trial court properly excludes expert's conclusion where "there is simply too great an analytical gap between the data and the opinion proffered"). Mr. Whatley may opine regarding application of the Georgia-Pacific factors.

**III. CONCLUSION**

For all of the foregoing reasons, the Court GRANTS IN PART AND DENIES IN PART HHI's motion to exclude or limit expert testimony (Dkt. #45) and Costco's request to strike the damages portions of Mr. Whatley's expert reports. Both Mr. Hansen and Mr. Whatley may testify regarding the Georgia-Pacific factors and the application thereof; their conclusions regarding a reasonable royalty amount are excluded based on the current record.

DATED this 13th day of May, 2005.

Robert S. Lasnik
United States District Judge